UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DIEGO FERNANDO OROZCO-MENDEZ,

                Plaintiff,                11 Civ. 417 (PKC)

    -against-

                                        MEMORANDUM
                                        AND ORDER
UNITED STATES OF AMERICA,

                Defendant.
-----------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Diego Fernando Orozco-Mendez, proceeding pro se, has filed a petition to vacate, set aside or correct his sentence or be granted a hearing pursuant to 28 U.S.C. § 2255, asserting that he was denied the effective assistance of counsel and was sentenced in excess of the maximum warranted by the established facts in violation of the Sixth Amendment. He also asserts that he was denied due process in violation of the Fifth and Fourteenth Amendments and that his sentence violates the Rule of Specialty. For the reasons discussed below, the petition is denied.

BACKGROUND

        On October 13, 2005 an indictment was returned in this District against Orozco-Mendez. (05 Cr. 1069-4 (GEL), Docket # 1) The indictment charged one count of conspiracy to import and distribute one kilogram and more of heroin in violation of sections 812, 952(a), 959(a), 960(a)(1), 960(b)(1)(B)(ii) and 963 of Title 21, United States Code, and one count of conspiracy to distribute, and to possess with the intent to distribute, one kilogram and more of heroin in violation of sections 812, 841(a)(1), 841(b)(1)(A) and 845 of Title 21, United States

Code.  On November 3, 2005, Orozco-Mendez was indicted in the District of Massachusetts on similar charges.  (Pet'r. Mem., Ex. 2)

Orozco-Mendez was arrested on November 30, 2005 in the Republic of Colombia and was held in Combita Prison pending extradition on a warrant issued out of this District. (Pet'r. Mem., Ex. 9, 11; Orozco-Mendez Aff. ¶ 1.)  The United States Attorney's Office for the District of Massachusetts did not seek extradition because the offenses charged were similar to those charged in New York.  (Gov't. Mem., Ex. G.)  Because the United States Attorney's Office for the District of Massachusetts did not seek extradition, it concluded that Petitioner could not be prosecuted in that district on the pending indictment under the Rule of Specialty, which circumscribes the specific crimes for which a defendant may be tried following extradition. (Pet'r. Mem., Ex. 9.); See United States v. Cuevas, 496 F.3d 256, 262 (2d Cir. 2007).  The government moved to dismiss Orozco-Mendez from the Massachusetts indictment, which motion was granted on February 16, 2007. (Gov't. Mem., Ex. G.)  Orozco-Mendez was extradited to the United States on November 1, 2007.  (Orozco-Mendez Aff. ¶ 1.)

In safety-valve proffer sessions in this District, Orozco-Mendez admitted to investing in two loads of heroin destined for the United States—a 2.9 kilogram load seized in July 2005 and a 16 kilogram load seized in October 2005.  (Id.)  Petitioner initially objected to discussing the 16 kilogram load but was advised by his counsel that if he did not discuss the second load he might not qualify for safety-valve relief and could face a consecutive sentence in Massachusetts.  (Orozco-Mendez Aff. ¶¶ 16-19.)  Counsel did not inform him that the indictment in Massachusetts had been dismissed.  (Orozco-Mendez Aff. ¶ 51.)  The government provided Orozco-Mendez with a Pimental letter, which stated that he was eligible for safety-valve relief and suggested a range of 108-135 months imprisonment based on an adjusted offense

level of 31 and a Criminal History Category of I. (Gov't. Mem., Ex. D). This recommendation included the 16-kilogram load as conduct relevant to determining the base offense level. Had Orozco-Mendez not qualified for a safety-valve adjustment he would have faced a mandatory minimum of 120 months. 21 U.S.C. §§ 841(b)(1)(A), 960(b)(1)(B)(ii).

Petitioner entered a plea of guilty to both counts of the indictment before Magistrate Judge Henry Pitman on June 4, 2008. During the plea colloquy, Magistrate Judge Pitman asked Orozco-Mendez if he had received the indictment and discussed it with trial counsel, if he was satisfied with counsel's representation, if he understood the nature of the charges against him, if he understood that the mandatory minimum sentence for his offense was ten years' imprisonment, if he understood that the appropriate Sentencing Guideline range would be determined after a presentence report that he could challenge was prepared, if he understood that the sentencing judge could depart from the guideline range and if he understood that he had the right not to plea guilty. (Pitman Plea Colloquy Tr. at 7-13.) Orozco-Mendez stated that he understood in response to each of these questions. (Id.) Then-District Judge Lynch adopted the guilty plea in an Order dated October 1, 2008.

On September 25, 2008, Judge Lynch sentenced Orozco-Mendez below the mandatory minimum term to concurrent terms of 108 months imprisonment on the two counts, supervised release of five years, and a $200.00 special assessment. Prior to sentencing, Judge Lynch determined that the appropriate Sentencing Guideline range was 108-135 months, which corresponded to a base offense level of 36 reduced by two levels for safety-valve relief and further reduced by three levels for acceptance of responsibility. (Id.) Orozco-Mendez appealed his sentence, and it was affirmed by the Second Circuit Court of Appeals on March 30, 2010.

Orozco-Mendez filed this habeas petition on January 1, 2011, within the one-year time limit imposed by the Antiterrorism and Effective Death Penalty Act.  28 U.S.C. § 2255(f)(1).  He seeks to have his sentence vacated, set aside or corrected or to be granted a hearing pursuant to section 2255.  He asserts five violations as the bases of his habeas petition: (1) he was denied the effective assistance of counsel in the trial court and on appeal in violation of the Sixth Amendment; (2) the government did not disclose the dismissal of the Massachusetts indictment in violation of his due process rights under the Fifth and Fourteenth Amendment; (3) his sentence exceeded the maximum authorized by the facts admitted or established by the guilty plea in violation of the Sixth Amendment; (4) the government did not uphold the plea agreement in violation of his due process rights under the Fifth and Fourteenth Amendment; and (5) his sentence violates the Rule of Specialty.

DISCUSSION

     I.     <u>Ineffective Assistance of Trial Counsel</u>

Orozco-Mendez's principal claim is that he did not receive the effective assistance of counsel during his safety-valve proffer.  He asserts that trial counsel's failure to inform him that the Massachusetts indictment had been dismissed combined with his warning that Orozco-Mendez risked a consecutive sentence if he did not discuss the 16-kilogram load during the safety-valve proffer rendered trial counsel ineffective.  This ineffectiveness, he asserts, carried over to the sentencing where trial counsel did not object to the inclusion of the 16-kilogram load of heroin in the computation of his Sentencing Guideline range.  He also asserts that trial counsel was ineffective because he failed to raise the claims presented in the Petition on appeal.

4

To prevail on an ineffective assistance of counsel claim, petitioner must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms" and "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688-89, 693-94 (1984). Assuming, arguendo, that trial counsel performed below an objective standard of reasonableness, Orozco-Mendez did not suffer any prejudice.

### A.  Failure to Investigate the Dismissal and Petitioner's Brady Claim

Orozco-Mendez asserts that trial counsel's failure to inform him that the Massachusetts indictment had been dismissed combined with counsel's warning that Orozco-Mendez risked a consecutive sentence if he did not discuss the 16-kilogram load during the safety-valve proffer rendered him ineffective. Assuming, arguendo, that trial counsel's acts fell below an objective standard of reasonableness, Petitioner was not prejudiced by these actions because the Massachusetts indictment had been dismissed and he faced a mandatory minimum of 120 months imprisonment in this District. 21 U.S.C. §§ 841(b)(1)(A), 960(b)(1)(B)(ii).

Orozco-Mendez's sentence could not be reduced below 120 months without the benefit of safety-valve relief, which he would have been unable to establish he was entitled to without admitting to the 16-kilogram load. See U.S.S.G. § 5C1.2(a)(5) (requiring defendant to truthfully provide all information concerning offenses that were part of the same course of conduct or plan). The dismissal of the Massachusetts indictment did not change what information Orozco-Mendez would have to offer in order to qualify for safety-valve relief. Even if Petitioner and his counsel had known about the dismissal, it would still have been his best strategy to discuss the 16-kilogram load in order to reduce his sentence below 120 months.

Orozco-Mendez's sentence is twelve months shorter than what it would have been had he not qualified for the safety valve and he would not have so qualified unless he truthfully described his role in the 16-kilogram load. The ineffective assistance of counsel claim is not established by the failure to investigate.

### B.  Failure to Object to the Sentencing Guideline Computation

Petitioner asserts that trial-counsel's failure to object to the inclusion of the 16-kilogram load of heroin in the computation of his Sentencing Guideline range rendered him ineffective. However, Petitioner cannot show that, but for this error, his sentence would have been different. Because Orozco-Mendez admitted to investing in the 16-kilogram load during his safety-valve proffer, it was properly included in the computation of his Sentencing Guideline range. See U.S.S.G. § 1B1.3(a) (offense level shall be determined based on all acts committed by defendant during commission of the offense). The "safety-valve" agreement in this District, which Orozco-Mendez signed, warns that proffer statements may be used for any purpose and at any stage of a criminal proceeding brought against the defendant. Moreover, Application Note 7 of U.S.S.G § 5C1.2, states that "[i]nformation disclosed by the defendant . . . may be considered in determining the applicable guideline range."[1] Counsel had no basis for objecting to the inclusion of the 16-kiolgram load, and his failure to do so does not satisfy the Strickland standard for ineffective assistance of counsel.

### C.  Petitioner's Claim that the Sentenced Exceeded the Maximum Authorized

Orozco-Mendez claims that his sentence exceeded the maximum authorized by the facts established by the guilty plea or admitted to by him in violation of United States v. Booker, 548 U.S. 220, 244 (2005). This claim is based on Petitioner's belief that the 16-

---

[1] The Application Note allows for an exception to this rule, not applicable here, where the government agrees not to use self-incriminating information provided pursuant to a cooperation agreement. See U.S.S.G § 1B1.8.

kilogram load was erroneously considered when determining his base offense level. Not only was the 16-kilogram load Petitioner admitted to during his "safety-valve" proffer properly included for the reasons discussed above, but Orozco-Mendez was also sentenced <u>below</u> the mandatory minimum of 120 months for the one kilogram and more of heroin he specifically pled to. <u>See</u> U.S.S.G. § 1B1.3(a); 21 U.S.C. §§ 841(b)(1)(A), 960(b)(1)(B)(ii). Petitioner's <u>Booker</u> claim is denied and does not meet the <u>Strickland</u> standard for ineffective assistance of counsel.

### D.  <u>Petitioner's Due Process Breach of Plea Agreement Claim</u>

Reading the Petition generously, Orozco-Mendez also claims that the government violated his due process rights by breaching the plea agreement. Specifically, he seeks "specific performance of the Rule 11 plea colloquy" arguing that the terms of his plea were breached. (Pet'r. Mem. at 12-18.) As noted, petitioner received a <u>Pimental</u> letter and did not enter into a plea agreement with the government. There was no statement in the course of the plea colloquy which could reasonably be construed as an agreement and the prosecution did not agree that no other conduct would be considered in calculating Orozco-Mendez's base offense level under the Sentencing Guidelines.

Petitioner bases his claim on the mistaken belief that he is serving a sentence for crimes that were not part of the indictment in this District and to which he did not plead guilty. Orozco-Mendez's current sentence is only based on his guilty plea to the two counts in the indictment in this District. Although his admission to the 16-kilogram load increased his base offense level under the Sentencing Guidelines, it also allows him to satisfy the safety-valve requirements. Petitioner was only convicted and sentenced for crimes to which he pled guilty and that sentence was below the statutory maximum for those crimes. The claim is denied and does not meet the <u>Strickland</u> standard for ineffective assistance of counsel.

E.  Petitioner's Rule of Specialty Claim

Orozco-Mendez also claims that the Rule of Specialty was violated when the 16-kilogram load was considered for sentencing purposes because it was not specifically charged in the indictment on which he was extradited.  Under the Rule of Specialty, prosecution for offenses for which the defendant may be criminally responsible is barred if the asylum state did not grant extradition for those crimes.  Johnson v. Browne, 205 U.S. 309 (1907).  The Second Circuit "has not conclusively decided" whether a defendant, rather than the asylum state, has standing to invoke the Rule of Specialty but has also not found it necessary to decide the question where the petitioner's argument "plainly fail[s] on the merits."  Cuevas, 496 F.3d at 262.

The Rule of Specialty "generally requires a country seeking extradition to adhere to any limitations placed on [the] prosecution by the surrendering country."  Cuevas, 496 F.3d at 262 (quoting United States v. Baez, 349 F.3d 90, 92 (2d Cir. 2003) (per curiam)).  "Typically, the Rule of Specialty is invoked to circumscribe the specific crimes for which a defendant may be tried following extradition."  Id. at 262.  However, the Rule of Specialty "does not purport to regulate the scope of proof admissible into evidence in the judicial forum of the requisitioning state."  United States v. Flores, 538 F.2d 939, 944 (2d Cir. 1976) (prior-act evidence may be admissible as proof of the charged conduct though the defendant could not be charged with those crimes).

Here, petitioner was convicted and sentenced for crimes to which he pled guilty, which were the same crimes as those charged in the indictment on which extradition was sought and obtained.  The 16-kilogram load was not charged as a separate offense, and Orozco-Mendez specifically admitted to his participation in that load in order receive a sentence below the

8

mandatory minimum as previously discussed.  Additionally, Petitioner's sentence of 108 months does not violate the Colombian government's conditions of extradition, which includes a prohibition against life-term sentences.  For these reasons, the Rule of Specialty claim is denied and does not meet the Strickland standard for ineffective assistance of counsel.

    II.      Petitioner's Ineffective Assistance of Appellate Counsel Claim

Petitioner asserts that appellate counsel was ineffective for the same reasons underlying his ineffective assistance of trial counsel claim.  Specifically, he asserts that appellate counsel was ineffective because he failed to inform him of the dismissal of the Massachussetts indictment, failed to object to the inclusion of the 16-kilogram load and did not raise the claims presented in this Petition on appeal.  For the reasons already discussed, Petitioner cannot show that, but for these errors, the result of his appeal would have been different.  Accordingly, the ineffective assistance of counsel claim as to appellate counsel is denied.

    III.      Petitioner's Due Process Brady Claim

Orozco-Mendez claims that the dismissal of the Massachusetts indictment was exculpatory material and that the government's failure to disclose this information was a violation of his due process rights under Brady v. Maryland, 373 U.S. 83 (1963).  It is well-settled that, "[i]n a criminal prosecution, the government is constitutionally obliged to disclose evidence favorable to the accused when such evidence is material to guilt or punishment." United States v. Gil, 297 F.3d 93, 101 (2d Cir. 2002) (citing Brady, 373 U.S. at 87.)

Because this claim was not raised on direct appeal, petitioner must demonstrate actual innocence or cause and prejudice for his failure to assert his claim prior to his habeas petition.  Bousley v. United States, 523 U.S. 614, 622 (1998) (internal quotations omitted). Orozco-Mendez does not assert that he is actually innocent but that the government's

suppression of evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), caused his procedural default and prejudiced the outcome of his case.  The cause and prejudice showing necessary to overcome a procedural default parallels two of the components of a Brady violation—suppression of the evidence and a showing of prejudice—and can be evaluated simultaneously with the merits of the Brady claim.  Banks v. Dretke, 540 U.S. 668, 691 (2004).

In order to demonstrate a violation of the government's Brady obligations, " '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [government], either willfully or inadvertently; and prejudice must have ensued.'"  Gil, 297 F.3d at 101 (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  Evidence is material for purposes of a Brady analysis "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  United States v. Brunshtein, 344 F.3d 91, 101 (2d Cir. 2003) (internal quotation marks and citations omitted), cert. denied, 543 U.S. 823 (2004).  Courts "assess materiality or prejudice in light of the trial evidence. Where the evidence against the defendant is ample or overwhelming, the withheld Brady material is less likely to be material than if the evidence of guilt is thin."  Gil, 297 F.3d at 103.

Petitioner's Brady claim is premised on the mistaken belief that Orozco-Mendez was included on the Massachusetts indictment as the result of a typographical error and that the indictment was dismissed to correct this error. (Pet'r. Mem. at 19.)  He asserts that he was prejudiced by the government's suppression of this information because he would have received a lower sentence had the court known about the dismissal.  However, the indictment was actually dismissed because extradition had only been sought on the New York indictment.  (Pet'r. Mem., Ex. 33.)  In either case, Petitioner's Brady claim fails.

Assuming, arguendo, that the government's actions constituted suppression of exculpatory evidence, Orozco-Mendez cannot show that the result of the proceeding would have been different had the dismissal been disclosed.[2] An indictment, standing alone, cannot be the basis for enhancing a sentence without reliable substantiation, and Orozco-Mendez has presented no evidence that the Massachusetts indictment (as distinguished from his role in the 16-kilogram load discussed in his "safety-valve" proffer) was a factor considered during sentencing such that knowledge of its dismissal would have changed the outcome of the proceeding. See United States v. Juwa, 508 F.3d 694 (2d Cir. 2007).

Orozco-Mendez implies that he would not have admitted to facts concerning the 16-kilogram load had he known about the dismissal of the Massachusetts indictment. But the refusal to disclose that information would have rendered him ineligible for the "safety valve" and changed the outcome of his case by increasing his sentence by twelve months as discussed above. Without proving that the outcome of the proceeding would have been beneficially different, Petitioner cannot prevail on his Brady claim or satisfy the prejudice element necessary to overcome the procedural default of this claim. Petitioner's Brady claim is procedurally defaulted and denied on the merits.

CONCLUSION

The Petition is DENIED. The Clerk is directed to enter judgment for the respondent and to terminate the Petition. Counsel for defendant shall provide plaintiff with copies of all unreported decisions cited herein.

---

[2] It is worth noting that "an indictment is not meant to serve an evidentiary function." United States v. Juwa, 508 F.3d 694, 701 (2d Cir. 2007). "Its primary purpose is to acquaint the defendant with the specific crime with which he is charged, allow him to prepare his defense, and protect him from double jeapordy." Id. (internal quotation marks and citations omitted.)

11

Petitioner has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue, 28 U.S.C. § 2253. See Lozada v. United States, 107 F.3d 1011, 1016-17 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

                                                  P. Kevin Castel
                                       United States District Judge

Dated: New York, New York
       December 15, 2011